IN THE UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT OF NEW YORK

Overview Books, LLC and Lev Tsitrin,
                  Plaintiffs

v.

The United States,
The Library of Congress, and
James H. Billington as the Librarian of Congress,
                  Defendants.

08 1842

VITALIANO, J.

POLLAK, M.J.

COMPLAINT

Plaintiffs, Overview Books, LLC and Lev Tsitrin, by their attorney Norman J. Finkelshteyn, complaining of the defendants, allege upon personal knowledge and information and belief as follows:

1.    That the jurisdiction of this court over the herein controversy is based on 28 U.S.C. § 1346 and the First and Fifth Amendment of the US Constitution.

2.    That from April of 2004 the plaintiff, Overview Books, LLC ("Overview Books"), was and still is a limited liability company duly formed and operating under the laws of the State of New York as a book publishing business and having its principle office in Brooklyn, New York.

3.    That plaintiff, Lev Tsitrin ("author", "writer"), under the pseudonym Vel Nirtist, is the author of the book "The Pitfall of Truth" and that this book was published by Overview Books in 2005.

4.    That the Library of Congress is an agency of the legislative branch of the U.S. government and that James H. Billington is at this time, and has been from 1987, the Librarian of Congress, the chief officer of the Library of Congress.

5.    That the Library of Congress operates the Cataloging in Publication ("CIP") Program, through which a bibliographic record is prepared by the Library of Congress for a book that has not yet been published. When the book is published, the publisher includes the CIP data on the copyright page thereby facilitating book processing for libraries and book dealers. Participation in the CIP Program is free.

6.    That, as part of the CIP program processing, Library of Congress staff complete descriptive cataloging (establishing new name authority records in the Library's name authority files as appropriate) for the book, assign subject headings (establishing new headings in the Library's subject authority file as appropriate), assign full Library of Congress

1

and Dewey decimal classification numbers and assign a Library of Congress Control Number (LCCN).

7.  That the descriptive cataloging includes a set of searchable subject keywords and the book which is part of the CIP program is made part of a searchable database routinely used by libraries and book vendors to search for new titles to acquire based on topics they are interested in.

8.  That prior to a book's publication, CIP staff distribute a machine-readable version of the record to large libraries, bibliographic utilities, and book vendors around the world to alert them to the forthcoming publication.

9.  That after the book is published, the publisher forwards the published book to the CIP Division and Library staff add other data elements to the catalog record (such as pagination and size) and ensure that the data elements in the record accurately describe the published work. Changes in title, subtitle, series, author, or subject may be made at this time.

10.  That after verification, the machine-readable version of the record is again distributed to large libraries, bibliographic utilities, and book vendors around the world – again focusing their attention on the upcoming title.

11.  That many of these vendors use the records distributed by the CIP program to create their own brochures which they use to notify their clients of forthcoming titles – geometrically expanding the reach of the free pre-publication awareness campaign provided by the CIP's distribution service.

12.  That all of the above described services are provided for free by the United States Government for all books submitted by publishers who are not publishing their own work and are publishing the work of at least three different authors.

13.  That the CIP program is identified by the Library of Congress as intended to select those books most likely to be of interest to the public.

14.  That therefore the CIP record, which is prominently printed on the inside of the title page, acts as a stamp of approval identifying the book as one judged worthwhile by the Library of Congress.

15.  That the CIP program does not in fact analyze the submitted books but accepts and processes all books submitted by non-author companies who are publishing the books of at least three different authors.

16.  That the CIP program provides no opportunity or mechanism or waiver to publishers who are also authors or to publishers who publish fewer than three authors to submit their books to the CIP program for consideration as books which may be of interest to the public.

17.  That many book vendors and libraries with automated systems not only use the CIP record to search out new titles but also expressly require the verified CIP record of any book

2

before they will consider it for purchase – expecting all books to be shipped with catalog card sets that reflect the final verified CIP record and automatically rejecting those without a CIP record.

18. That in September of 2004, Overview Books applied for a CIP record for "The Pitfall of Truth".

19. That Overview Books and "The Pitfall of Truth" complied with all CIP eligibility requirements which are based on cataloging practicalities.

20. That the Library of Congress rejected "The Pitfall of Truth" solely because of eligibility requirements that (1) the submitted book not be published by its author and (2) that the book be published by a publisher who has published the books of three or more authors.

21. That, as a book which was ineligible for CIP because the publisher is too small, the only registration option is the Preassigned Control Number ("PCN") program, an alternative, second class manner in which the Library of Congress assigns the LCCN.

22. That, once registered under the PCN program, a book can no longer be eligible to be registered under CIP.

23. That under the PCN program, the book does not receive searchable keywords.

24. That under the PCN program, the book is not placed on any of the lists of the CIP program nor is information distributed by the Library of Congress to any of the channels that it would be distributed to by the Library of Congress under the CIP.

25. That therefore, in stark contrast to a CIP book, the publishing and book distribution world is not in any way made aware of the forthcoming PCN book, nor can any entity find out about the forthcoming book by searching the governmentally provided industry database for new books on topics of interest to that entity.

26. That, without being catalogued in the CIP system, a book will not be picked up by the large number of libraries and vendors who require CIP catalogue listing.

27. That the distinction drawn by the CIP regulations between publishers who have published books by three authors and those who have published books by fewer than three authors is arbitrary.

28. That the distinction drawn by the CIP regulations between books published by publishers who have published books by three or more authors and books which the author chose to publish himself or with a smaller publisher is arbitrary.

29. That the CIP regulations are currently self-contradictory because they include one requirement which expressly forbids the submission of a book by middlemen and at the same time, the challenged eligibility requirements allow submission only by those publishers who

were not also the author of the book (and are thus simply middlemen between author and the reading world).

30. That the Library of Congress, through the challenged eligibility requirements assures that books published by small, new publishers and written by those writers who, either through choice, or by necessity, opted out of the big publisher system are kept out of most libraries and away from those book stores and vendors who use CIP cataloging data.

31. That the CIP eligibility rule is arbitrary, illogical, and in error in that it equates a book's quality or lack thereof with the irrelevant fact of its publication by a third-party non-author, while assuming lack of quality of a book published by its author.

32. That publishers quite commonly reject books without reading them and, as a matter of common practice make their choice whether to publish based on an author's connections and/or notoriety with little to no consideration of the author's qualifications with respect to the topic, the book's quality, or even the book's factual accuracy.

33. That, as a matter of policy, many publishers fail to maintain the most basic fact checking structures and bring to publication works of "non-fiction" containing miss-statements and fabrications.

34. That the CIP eligibility rule is arbitrary, illogical, and in error in that it presumes, without foundation and contrary to facts, a correlation between a book's quality and the number of authors published by the publisher who the author contracted with to publish that book.

35. That the CIP eligibility rule is arbitrary, illogical, and in error in that it presumes, without foundation and contrary to facts, a correlation between a book's quality and its author's connections in the publishing world.

36. That the Library of Congress has established the complained of eligibility requirements as the means to restrict access to the CIP benefit to only those books which are "vetted" or approved by entities which the Library of Congress has declared capable of determining what books are worthwhile.

37. That via the complained of eligibility requirements, the Library of Congress has therefore created a system of censorship and delegated to the approved publishers the job of censor.

38. That via the complained of CIP eligibility rule, the Library of Congress has instituted a regime of prior restraint by preventing, in advance of publication, the access by books published by authors and small publishers to the mainstream marketplace of ideas including most library systems and vendors.

39. That the Library of Congress regulations thus substantially and impermissibly burden the First Amendment expression of writers who either chose not to sell to a publisher or have no access to one.

40. That the Library of Congress regulations thus likewise substantially and impermissibly burden the First Amendment expression of small publishers.

41. That the Library of Congress regulations thus substantially discourage writers from signing with the small, new publishers – as the books of such writers will be permanently ineligible for CIP cataloguing and thus permanently kept out of libraries and away from any vendors who use the CIP catalogue.

42. That by assuring that the books of small, new publishers are not picked up by most libraries and vendors who require the CIP catalogue listing, the Library of Congress denies these small publishers a substantial market, while at the same time subsidizing marketing by large, established publishers.

43. That the Library of Congress regulations thus substantially and impermissibly drive and control the publishing market by propping up the growth of established publishers while assuring that the small, new publishers are deprived of a fair shot at income from the substantial library market and substantially disadvantaged in their efforts to attract writers and expand their catalogue and their business.

44. That by thus giving control of the ordinary means of public access to books to the established publishers, the complained of CIP eligibility rules substantially burden the public interest in an unfettered marketplace of ideas by limiting the quantity and quality of ideas available to the public, and thus the nature of public debate as a whole.

45. That the complained of CIP eligibility rules thus, in effect force all but the bravest (and perhaps most foolhardy) writers to sign contracts with established publishers or be kept out of the mainstream of the publishing and book distribution marketplace.

46. That the Library of Congress regulations thus substantially and impermissibly burden the rights of Association of writers and publishers.

47. That the Library of Congress regulations thus substantially and impermissibly burden the rights of freedom of Contract of writers and publishers.

48. That the CIP-instituted precondition that an author's work can enter the mainstream of the publishing and book distribution marketplace only if and when the author transfers the property rights to that work to a non-author, constitutes a taking of the author's property.

49. That thus, by denying the benefits of the CIP program to plaintiff, Lev Tsitrin, the Library of Congress regulations have abridged the free speech rights, effected a taking of property rights, and impacted the due process rights of plaintiff, Lev Tsitrin.

50. That thus, by denying the benefits of the CIP program to plaintiff, Overview Books, the Library of Congress regulations have abridged the free speech rights, effected a taking of property rights, and impacted the due process rights of plaintiff, Overview Books.

WHEREFORE, plaintiffs respectfully request that this court grant judgment against the defendants invalidating that portion of the CIP regulations which discriminate between books published by publishers who have previously published books by three or more authors and those published by smaller publishers or the authors themselves, directing the Library of Congress to enter "The Pitfall of Truth" into the CIP program (with modifications necessary because the book has already been published), awarding to plaintiffs the statutory maximum permitted to this court as partial compensation for damages caused by the unconstitutional failure by Mr. Billington and The Library of Congress to grant the CIP to "The Pitfall of Truth", and such other and further relief as this court may deem just and proper, including costs and expenses that the plaintiffs incur in pursuing the matter.

Dated: May 6, 2008

_____
Norman J. Finkelshteyn
Attorney for Plaintiffs
1532 East 35th Street
Brooklyn, New York 11234

norman@lawyer-ny-nj.com
Tel:   (718) 974-9834
Fax:   (718) 732-1672

IN THE UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT OF NEW YORK

Overview Books, LLC and Lev Tsitrin,
                        Plaintiffs

v.

                                              No._____

The United States,
The Library of Congress, and
James H. Billington as the Librarian of Congress,
                        Defendants.

## DISCLOSURE STATEMENT

1.    Overview Books, LLC ("Overview Books") is a limited liability company formed and operating under the laws of the State of New York.

2.    It is wholly owned and operated by Lev Tsitrin.

3.    There is no parent corporation or any other corporate entity that owns any part of Overview Books.


Dated: May 6, 2008

                                                    Norman J. Finkelshteyn
                                                    Attorney for Plaintiffs
                                                    1532 East 35th Street
                                                    Brooklyn, New York 11234

                                                    norman@lawyer-ny-nj.com
                                                    Tel:   (718) 974-9834
                                                    Fax:  (718) 732-1672